UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS MARIC,<br><br>  Plaintiff,<br><br>  v.<br><br>ALVARADO, et al.,<br><br>  Defendants. | No. 1:12-cv-00102-SKO<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY, SUMMARY ADJUDICATION<br><br>(Doc. 152) |

This matter is before the Court on Defendants' motion for summary judgment or alternatively, summary adjudication pursuant to Federal Rule of Civil Procedure 56 filed on October 22, 2019. (Doc. 152.) Plaintiff did not file an opposition. The Court reviewed the motion and supporting material and found the matter suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing set for January 29, 2020,[1] was therefore vacated. (Doc. 162.)

For the reasons set forth below, the motion is denied.

---

[1] On December 2, 2019, the Court granted in part Plaintiff's motion for continuance of the hearing on Defendants' motion. (Doc. 161.) Plaintiff nonetheless failed to file an opposition by the extended deadline of January 15, 2020.

1

## I. FACTUAL BACKGROUND

**A. Defendants' Version of Events[2]**

On March 18, 2010, at 11:51 p.m., Plaintiff's wife, Mary Maric, called the Fresno County Sheriff's Office to request police assistance at Plaintiff's apartment. (Doc. 152-1 at 8; Doc. 152-2 at 3.) Defendants then received information from dispatch stating, in effect, that Plaintiff was "drunk and breaking . . . property" but "there ha[d] been no physical disturbance." (*Id.*) Defendants Alvarado, Maldonado, and Robinson arrived at Plaintiff's apartment at approximately 11:57 p.m. (Doc. 152-1 at 8; Doc. 152-2 at 4.)

Defendant Robinson knocked on the door and Plaintiff answered. (Doc. 152-1 at 9; Doc. 152-2 at 4.) Plaintiff "was calm for a few seconds and then appeared to be agitated that [Defendants] were there." (Doc. 152-1 at 9; Doc. 152-2 at 5.) Defendants could see through the door that Mary and two small children were "sitting on a couch in the living room huddled together . . . quiet and not speaking" and that "[Mary] was wide-eyed and it appeared she was upset and wanted help." (*Id.*) Defendant Robinson asked Plaintiff to come outside so Defendants could speak to him, and Plaintiff refused, stating that Defendants "were violating his God-given rights and he would not step outside." (Doc. 152-1 at 9; Doc. 152-2 at 6.) Defendants believed Plaintiff was intoxicated because his eyes were bloodshot, he smelled of alcohol, his speech was slurred, and he spoke in a raised voice. (Doc. 152-1 at 9; Doc. 152-2 at 7.)

Defendants "believed Plaintiff was going to try and shut the door on them" so Defendant Robinson "put his foot in the door to prevent Plaintiff from closing it." (*Id.*) Next, "[i]n order to further their investigation in a safe manner for all involved, [Defendants] Maldonado and Robinson stepped into the apartment, took hold of Plaintiff's arms and escorted him outside." (Doc. 152-1 at

---

[2] The facts in this section are taken from Defendants' motion for summary judgment and Defendants' statement of undisputed facts submitted with the motion. (*See* Docs. 152-1, 152-2.)

2

10; Doc. 152-2 at 8.) At that time, Defendants placed Plaintiff in handcuffs "[f]or officer safety purposes based on the nature of the call, and Plaintiff's behavior up to that point in time[.]" (*Id.*)

Defendant Maldonado then entered the apartment while Defendant Alvarado stood "at the door threshold to monitor both scenes" until Defendant Burk arrived. (Doc. 152-1 at 10; Doc. 152-2 at 9.) Plaintiff "never objected to the deputies going inside his apartment." (*Id.*) Once Defendant Maldonado was inside the apartment, Mary told him that Plaintiff kept a handgun in a top dresser drawer in the living room and a shotgun under the mattress in the bedroom. (Doc. 151-1 at 10–11; Doc. 152-2 at 10–12.) Defendant Burk then arrived on the scene, entered the apartment, and found the loaded handgun in the dresser. (*Id.*) Defendant Maldonado found the loaded shotgun in the bedroom. (*Id.*) Defendants seized both firearms and, at Mary's request, obtained an emergency restraining order on Plaintiff. (Doc. 151-1 at 11; Doc. 152-2 at 12.)

**B.     Plaintiff's Version of Events[3]**

Plaintiff admits he drank about six beers from noon until the time Defendants arrived but denies that he was intoxicated and denies yelling or acting violent or out of control. (Doc. 152-3 at 5–6, 19.) Plaintiff states that after Mary called police, Defendants Alvarado, Maldonado and Robinson arrived to his apartment together and asked to speak with him. (*Id.* at 4.) Plaintiff declined to voluntarily step outside and speak with Defendants. (*Id.* at 23.) Plaintiff states that Defendants could see Mary and the children through the door, and that Mary was not speaking. (*Id.*

---

[3] The facts in this section are taken from Plaintiff's "Admission & Denial of Defendant's [sic] Undisputed Facts" submitted in connection with Defendants' previous motion for summary judgment, which Defendants attached to the present motion, (Doc. 152-3 at 4–14). "When a summary judgment motion is unopposed, a district court must 'determine whether summary judgment is appropriate—that is, whether the moving party has shown itself to be entitled to judgment as a matter of law.'" *Pinder v. Employment Development Department*, 227 F. Supp. 3d 1123, 1135 (E.D. Cal. 2017) (citation omitted). Rule 56 "requires a district court to consider the [summary judgment] motion papers as well as such other papers in the record to which they refer." *Martinez v. Stanford*, 323 F.3d 1178, 1184–85 (9th Cir. 2003) (citing *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001)). Here, the Court considered all papers submitted in connection with Defendants' motion, including Plaintiff's sworn "Admission & Denial of Defendant's [sic] Undisputed Facts," (Doc. 152-3 at 4–14), and excerpts from Plaintiff's updated deposition on July 2, 2019, (Doc. 152-3 at 16–27). *See Martinez*, 323 F.3d at 1184–85.

at 5.) Plaintiff allegedly "answered the door and was speaking with [Defendants] in [his] normal calm manner, then they bum-rushed" him. (*Id.* at 13.) Defendants Alvarado and Robinson then "entered [Plaintiff's] apartment, grabbed [Plaintiff] by the arms and physically took [Plaintiff] out of the apartment." (*Id.* at 5.) Defendant Robinson then grabbed Plaintiff's shoulders and "leg-swept" Plaintiff to the ground. (*Id.* at 7.) Plaintiff states Defendant Robinson stayed outside with Plaintiff while Defendants Maldonado and Burk entered the apartment and seized his firearms.[4] (*Id.* at 5.)

## II. PROCEDURAL BACKGROUND

Plaintiff filed the operative first amended complaint (FAC) on May 9, 2012. (Doc. 5.) On September 5, 2012, the previously assigned district judge dismissed certain claims in the FAC, including a claim under article I, section 13 of the California Constitution, and allowed Plaintiff to proceed on other claims. (Doc. 7 at 2.) On January 23, 2014, the previously assigned district judge granted Defendants' motion for summary judgment on Fourth Amendment claims for warrantless entry and seizure and malicious prosecution, a claim under article I, section 1 of the California Constitution, and a false imprisonment claim, and denied the motion on a claim for Fourth Amendment excessive force and a state law claim for assault and battery. (*See* Doc. 55.) The parties later consented to the jurisdiction of a U.S. magistrate judge, (*see* Docs. 65, 66, 67, 70), and the case proceeded to trial on the excessive force and assault and battery claims before the undersigned on April 15, 2014. (Doc. 96.) On April 16, 2014, the jury returned a verdict for Defendants. (Doc. 101.)

Plaintiff filed a notice of appeal on May 1, 2014. (*See* Doc. 106.) On September 6, 2018, the U.S. Court of Appeals for the Ninth Circuit remanded Plaintiff's Fourth Amendment claims for

---

[4] Plaintiff was charged with various misdemeanors and transported to jail that night, but the charges were dismissed on December 16, 2010. (*See* Doc. 5 at 6.)

4

warrantless entry and arrest, the warrantless entry claim under article I, section 1 of the California Constitution, and the false imprisonment claim, as well as the warrantless arrest claim under article I, section 13 of the California Constitution. *Maric v. Alvarado*, 748 F. App'x 747, 748 (9th Cir. 2018).

Defendants now move again for summary judgment, or in the alternative, summary adjudication, on Plaintiff's Fourth Amendment claims for warrantless entry and arrest, the claims under the California Constitution, and the false imprisonment claim. (Doc. 152.)

### III.  LEGAL STANDARDS FOR SUMMARY JUDGMENT

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim ...") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the

"initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for

summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### IV. DISCUSSION

**A. Fourth Amendment Warrantless Entry**

**1. Legal Standards**

The Fourth Amendment protects individuals from all unreasonable searches and seizures and "has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590 (1980). "Searches and seizures inside a home without a warrant are presumptively unreasonable." *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009) (internal quotation marks omitted). However, there is an "emergency aid" exception to the warrant requirement. *See Bonivert v. City of Clarkson*, 883 F.3d 865, 876 (9th Cir. 2018). That exception "permits law enforcement officers to 'enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *Id.* (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

District courts "assess officers' actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Sandoval v. Las Vegas Metropolitan Police Dept.*, 756 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). However, "law enforcement must have an *objectively reasonable basis* for concluding that there is an immediate need to protect others or themselves from serious harm," *Hopkins*, 573 F.3d at 763–64, and "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or

7

arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984); *see also Bonivert*, 883 F.3d at 877 ("[T]he emergency exception is 'narrow' and 'rigorously guarded.'") (citation omitted). When relying on the emergency exception, the police must "show that a warrant could not have been obtained in time[.]" *Struckman*, 603 F.3d at 738.

### 2. Analysis

Because warrantless entry into the home is presumptively unreasonable, *Hopkins*, 573 F.3d at 763, Defendants bear the burden at the summary judgment stage of adducing "evidence sufficient to remove any triable issue of fact that Mary or the children were in . . . immediate danger" or needed emergency assistance to prevent imminent injury. *See Maric*, 748 F. App'x at 749. The Court finds Defendants have not met their burden to remove any triable issues of fact as to whether "violence was imminent," *Bonivert*, 883 F.3d at 878, and thus summary judgment is inappropriate.

It is disputed whether Mary was "frowning" or "appeared upset," but it is undisputed that Mary and the children were sitting quietly on the couch and Defendants had a clear view of all three through the doorway, and there is no evidence that they were injured or relayed any threat of "immediate danger" when Defendants arrived. (*See* Doc. 152-2 at 5; 152-3 at 5.) As the Ninth Circuit has held, "there were simply no circumstances pointing to an actual or imminent injury inside the home." *Maric*, 748 F. App'x at 750. Further, as observed by the Ninth Circuit, the evidence indicates that Defendants likely could have obtained a warrant to enter the home in a timely manner. *See id.* at 749 ("[A]fter Mary requested a protective order, Defendants were able to obtain one within approximately twenty minutes"); (*see* Doc. 152-6 at 4.) Finally, the analysis of whether Defendants had an "objectively reasonable" basis to believe injury was imminent is "essentially the same" as the analysis of whether exigent circumstances existed, *U.S. v. Black*, 482 F.3d 1035, 1041 n.1 (9th Cir. 2007), and the Ninth Circuit previously found triable issues of fact

under the exigent circumstances exception, *Maric*, 748 F. App'x at 749.[5]

**B.     Warrantless Entry Under Article I, Section 1 of the California Constitution**

"[I]n the search and seizure context, the article I, section 1, privacy clause of the California Constitution has never been held to establish a broader protection than that provided by the Fourth Amendment of the United States Constitution." *Sanchez v. County of San Diego*, 464 F.3d 916, 930 (9th Cir. 2006) (internal quotation marks omitted); *see also People v. Elwood*, 199 Cal.App.3d 1365, 1371–72 (1988). Thus, there are triable issues of fact as to Plaintiff's California warrantless entry claim for the same reasons as set forth for the Fourth Amendment claim in Section IV.A.1, *supra*. *See, e.g., Olvera v. City of Madera*, 38 F. Supp. 3d 1162, 1181 (E.D. Cal. 2014) (defendants were not entitled to summary judgment on the plaintiff's Fourth Amendment claims, "[t]hus, summary judgment on Plaintiff's California constitutional law claims based on the same arguments is not appropriate"); *Arroyo v. Tilton*, No. 1:11-cv-01186 DLB PC, 2012 WL 1551655, at *7 (E.D. Cal. Apr. 30, 2012) (because the complaint stated a claim for unlawful search under the Fourth Amendment, it necessarily stated a claim under Article I, Section 1 of the California Constitution).

**C.     Fourth Amendment Warrantless Arrest**

**1.     Legal Standards**

"[S]eizures inside a home without a warrant are presumptively unreasonable." *United States v. Martinez*, 406 F.3d 1160, 1163 (9th Cir. 2005) (internal quotation marks omitted). "The Fourth Amendment protects against warrantless arrest inside a person's home in the same fashion that it protects against warrantless searches of the home." *Hopkins*, 573 F.3d at 773. Thus, "police

---

[5] Defendants also mention in passing that Plaintiff's "[c]onsent [to the warrantless entry] was . . . implied by silence." (Doc. 152-1 at 17.) Consent to search can be express or implied, but it must be "unequivocal and specific." *United States v. Basher*, 629 F.3d 1161, 1167–68 (9th Cir. 2011). Here, Plaintiff states only that he may not have specifically told Defendants they did *not* have his permission to enter, (Doc. 152-3 at 24), and thus there are at least triable issues of fact as to whether Plaintiff consented to Defendants entering or searching the home and the extent of any consent given. *See, e.g., United States v. Escobar*, 309 F. Supp. 3d 778, 784 (N.D. Cal. 2018).

officers may not execute a warrantless arrest in a home unless they have both probable cause and exigent circumstances." *Id.* The rule applies "inside a home or its curtilage," *United States v. Struckman*, 603 F.3d 731, 747 (9th Cir. 2010), and applies when officers involuntarily remove the arrestee from the home and thereafter effect the arrest. *See, e.g, Hopkins*, 573 F.3d at 773.

"There is probable cause for a warrantless arrest . . . if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984). "The exigent circumstances exception allows warrantless searches and seizures when an emergency leaves police insufficient time to seek a warrant . . . Under this exception, for example, the police need not wait to get a warrant if there is an urgent need to provide aid or if there is concern evidence might be destroyed in the time it would take to get a warrant." *Recchia v. City of Los Angeles Department of Animal Services*, 889 F.3d 553, 558 (9th Cir. 2018). Defendants bear the "burden of showing specific and articulable facts to justify the finding of exigent circumstances." *See United States v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002) (per curiam).

### 2. Analysis

Defendants contend Plaintiff's arrest was justified because they had probable cause to believe Plaintiff violated California Penal Code (CPC) § 273a(b), willfully causing a child to be in a situation where the child's health may be endangered. (*See* Doc. 152-1 at 19–20.) Defendants contend that they obtained probable cause to arrest Plaintiff only upon their entry into the home—an entry Defendants contend was "lawful"—when Mary "directed [Defendants] to two loaded firearms . . . that were easily accessible to the . . . children." (*See id.* at 18–19.) However, as explained above, there are fact issues as to whether Defendants had a lawful right to enter Plaintiff's home in the first instance, and Defendants admit they discovered the firearms only as a result of their entry into the home. (*See id.* at 19). If the entry was unlawful, then the discovery of the

firearms may also be unlawful, *see United States v. Gorman*, 859 F.3d 706, 717 (9th Cir. 2017).

In any event, although Defendants essentially assert that they obtained probable cause because Plaintiff kept unlocked firearms in the house, (*see* Doc. 152-1 at 19), Defendants have cited no authority stating that keeping unlocked firearms in the house by itself violates CPC § 273a(b). Thus, Defendants have not indisputably established that they had probable cause to arrest Plaintiff for a violation of CPC § 273a(b). *See Maric v. Alvarado*, 748 F. App'x at 749. Finally, Defendants do not address exigent circumstances in the context of the warrantless arrest.[6] *See Ojeda*, 276 at 488. Thus, the Court denies Defendants' motion as to the Fourth Amendment warrantless arrest claim.

**D.     Warrantless Arrest Under Article I, Section 13 of the California Constitution**

Article I, section 13 of the California Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Defendants contend that article I, section 13 of the California Constitution "confers no private cause of action for damages," citing the previous order in this case dismissing the claim on that basis. (Doc. 152-1 at 20; *see* Docs. 6, 7.) However, "[t]he California Supreme Court has not . . . addressed whether a plaintiff may seek damages for a violation of article 1, section 13." *Roy v.*

---

[6] To the extent that Defendants assert Plaintiff's arrest may be justified by probable cause alone, (*see* Doc. 152-1 at 18), Defendants have failed to establish that the rule regarding warrantless arrests inside the home should not apply. It is undisputed that Defendants forcibly removed Plaintiff from inside the apartment after crossing the threshold of the doorway and entering. (*See, e.g.*, Doc. 152-2 at 8 ("[Defendants Maldonado and Robinson] stepped into the apartment, took hold of Plaintiff's arms and escorted him outside"); Doc. 152-1 at 19 ("Upon their . . . entry of the apartment . . . [Defendants] separated [Mary and Plaintiff.]") Thus, Plaintiff's arrest must be justified by both probable cause and exigent circumstances. *See Hopkins*, 573 F.3d at 773; *United States v. Lundin*, 47 F. Supp. 3d 1003, 1016 (N.D. Cal. June 26, 2014) ("If officers may not arrest a suspect in his home without a warrant, it follows necessarily that they cannot order him to leave his home so that he may be arrested without a warrant."); *see also Fisher v. City of San Jose*, 558 F.3d 1069, 1077 (9th Cir. 2009).

*County of Los Angeles*, 114 F. Supp. 3d 1030, 1042 (C.D. Cal. 2015); *see also Dolores Velasquez v. County of San Bernardino*, Case No. EDCV 17-2344 JGB (SHKx), 2018 WL 6061204, at *2 (C.D. Cal. Mar. 1, 2018) ("There is a split among federal district courts on whether § 13 confers an action for money damages"); *Camarillo v. City of Maywood*, No. CV 07-3469 ODW (SHx), 2008 WL 4056994, at *6 (C.D. Cal. Aug. 27, 2008) ("Further analysis of [*Katzberg v. Regents of Univ. of Cal.*, 29 Cal.4th 300, 303 (2002)] demonstrates the California Supreme Court's recognition of a damages claim under Article I, § 13."). Further, as Defendants acknowledge, (Doc. 152-1 at 20), the Ninth Circuit previously determined that the Court erred in dismissing Plaintiff's claim under article I, section 13. *See Maric*, 748 F. App'x at 748. Under the "law of the case doctrine," the district court is "generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988), *amended*, 860 F.2d 357 (9th Cir. 1988). Thus, the Court denies Defendants' motion as to the warrantless arrest claim under article I, section 13 of the California Constitution.

**E.    State Law False Imprisonment**

"Under California law, the elements of a claim for false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young v. County of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (internal quotation marks omitted). "[T]he torts of false arrest and false imprisonment are not separate torts, as false arrest is but one way of committing a false imprisonment." *Watts v. County of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001) (internal quotation marks omitted). "A cause of action for false imprisonment based on unlawful arrest will lie where there was an arrest without process followed by imprisonment." *Id.* In California, false imprisonment "consists of the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal.4th 701,

715 (1994).

Here, the Court finds triable issues of fact exist as to whether Defendants falsely imprisoned Plaintiff and denies Defendants' motion as to this claim. It is undisputed that Defendants' confinement of Plaintiff was nonconsensual, intentional, and for "an appreciable length of time." (*See* Doc. 152-2 at 5–11.) Defendants contend that they had a "lawful privilege" to confine Plaintiff under CPC § 836(a)(1), because Defendants had probable cause to believe Plaintiff committed an offense in an officer's presence. (Doc. 152-1 at 22.) However, the Ninth Circuit explicitly held otherwise.[7] *Maric*, 748 F. App'x at 750 ("The district court ruled that the officers did not violate CPC § 840 because" their conduct fell under the exception in CPC § 836(a)(1) . . . "The district court was incorrect."). The Ninth Circuit also held that Plaintiff's arrest was unlawful under CPC § 840[8] and that Plaintiff "proffered evidence sufficient to demonstrate that [Defendants] falsely imprisoned him." *Id.* at 750. As explained above, the Court is bound by the Ninth Circuit's ruling. *Richardson*, 841 F.2d at 996.

**F.    Qualified Immunity**

   **1.    Legal Standard**

Qualified immunity is an affirmative defense that protects an officer "from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). The test for qualified immunity asks whether "the facts alleged show the officer's conduct violated a constitutional right," "whether the right was clearly established," and, if it was, whether the officer "made a reasonable mistake as to what the law

---

[7] Defendants also contend they are statutorily immune from liability on Plaintiff's false imprisonment claim under CPC § 847(b), because Defendants "made a lawful arrest or 'had reasonable cause to believe the arrest was lawful.'" (Doc. 152-1 at 22) (citing CPC § 847(b)). Defendants' contention is unpersuasive because, as set forth in this order, there are triable issues of fact as to whether the arrest was lawful and whether Defendants had reasonable cause to believe it was lawful.

[8] CPC § 840 states, in relevant part, that "[a]n arrest for the commission of a misdemeanor or an infraction cannot be made between the hours of 10 o'clock p.m. of any day and 6 o'clock a.m. of the succeeding day."

requires." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Although "both the 'clearly established right' and 'reasonableness' inquiries are questions of law," claims cannot be resolved at summary judgment on qualified immunity grounds where factual disputes exist. *Stevenson v. Holland*, No. 1:16-CV-01831-AWI, JLT, 2020 WL 264422, at *21 (E.D. Cal. Jan. 17, 2020); *see Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate.") (citations omitted).

### 2. Analysis

Here, Defendants contend that they are entitled to qualified immunity because "competent officers could have believed that the entry was justified under the exigent circumstances rationale" and Defendants "could not know that crossing Plaintiff's threshold and escorting him outside the apartment . . . would violate the Fourth Amendment." (Doc. 152-1 at 23.) However, the Ninth Circuit previously determined that Defendants were not entitled to qualified immunity as to both the warrantless entry and warrantless arrest claims. *See Maric*, 748 F. App'x at 751. Further, as set forth above, the Court finds that there are triable issues of fact as to whether the emergency aid exception applies and whether exigent circumstances and probable cause existed to support Plaintiff's arrest.

Triable issues of fact also exist as to Defendants' relevant conduct, the reasonableness of their belief that entry was necessary, and the reasonableness of their belief that Plaintiff's arrest was lawful. As the Ninth Circuit held, the resolution of both the "clearly established" and "reasonableness" inquiries in Defendants' favor depend upon the resolution of these disputed issues of fact in Defendants' favor. *See Maric*, 748 F. App'x at 751. Thus, the Court declines to resolve Plaintiff's claims on qualified immunity grounds at this stage, but Defendants may raise the issue

14

at trial. *See Torres*, 648 F.3d at 1123; *Wilkins*, 350 F.3d at 956.

**V. CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment or alternatively, summary adjudication, (Doc. 152), is DENIED.

IT IS SO ORDERED.

Dated: **February 27, 2020** /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE